IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:16-cr-00022 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| ALLAH TRUTH KELLEY ) | United States District Judge |

**MEMORANDUM OPINION**

Defendant Allah Truth Kelley, proceeding *pro se*, filed a motion for compassionate release. (Dkt. No. 137.) On July 24, 2020, pursuant to Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) to represent Kelley. (Dkt. No. 138.) The FPD filed a supplemental motion on September 11, 2020. (Dkt. Nos. 143.) The government responded on September 25 (Dkt. No. 149), and the FPD filed a reply on October 2 (Dkt. No. 155.)

For the reasons stated below, Kelley's motion will be granted.

I.  BACKGROUND

In 2016, Kelley pled guilty to one count of possession of a firearm by a convicted felon (Presentence Investigation Report 5, Dkt. No. 98) and was sentenced on January 24, 2017, to a prison term of 78 months, followed by three years of supervised release. He had been in federal custody since March 18, 2016. (*Id*. at 1.) Kelley has an extensive criminal history of firearms and drug charges, dating back to 1996. In this case, the mother of Kelley's third child placed a 911 call complaining that Kelley had a weapon and was refusing to leave her residence. Kelley eventually left, but his vehicle was stopped by officers who found him alone in the car with two semi-automatic weapons, marijuana in his pocket, and the smell of burned marijuana coming from the car. (*Id.*at 5.)

Kelley is detained at FCI Butner Medium II in North Carolina. Kelley's estimated release date is September 23, 2021. He is scheduled to be transferred to a halfway house on March 30, 2021, and he is eligible for home detention in June 2021. Kelley has an unblemished disciplinary record, and he has participated in numerous vocational and rehabilitative workshops. Kelley is 43 years old.

Kelley is 5'11" and 241.5 pounds, with a body mass index (33.7) that renders him clinically obese. Obesity is recognized by the Centers for Disease Control and Prevention (CDC) as a risk factor that can lead to serious complications due to COVID-19.[1] According to Bureau of Prisons' (BOP) tracking website, there are four active cases among inmates at Butner Medium.[2] Overall, Butner has been described as suffering "one of the worst coronavirus outbreaks in the federal prison system."[3]

If released, Kelley intends to stay with a longtime friend and his youngest daughter in the City of Roanoke. Kelley has also been offered employment at a Wendy's restaurant in Roanoke, and he has the skills to obtain higher-wage employment. Kelley has certifications for plumbing and electrical work, and he has developed skills for welding and floor covering.

II. ANALYSIS

A. Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

---

[1] *See* https://www.cdc.gov/2019-ncov/need-extra-precautions/index.html.

[2] *See* Bureau of Prisons, *BOP COVID-19 Modified Operations Plan*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 7, 2020).

[3] *See* Lynn Bonner, "Another Butner Federal Prison Inmate Dies from Coronavirus," News & Observer (July 6, 2020), https://www.newsobserver.com/article244023922.html (last visited Sept. 9, 2020).

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the reduction must be "consistent with applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission's policy statement on compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. The Policy provides, in pertinent part, that under § 3582(c)(1)(A), the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a)," the court determines that:

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. In the application notes, the Policy recognizes extraordinary and compelling reasons with regard to medical conditions (terminal illnesses or serious conditions that diminish self-care abilities), age with deterioration and significant time served, family circumstances, and other extraordinary and compelling reasons other than, or in combination with, the above reasons. U.S.S.G. § 1B1.13 n.1.

### B. Exhaustion

Kelley submitted a request to the warden of his facility on June 18, 2020, and received a denial on July 9, 2020. Because more than thirty days have passed since Kelley's request, Kelley has exhausted his administrative remedies as required by 3582(c)(1)(A).

### C. Extraordinary and Compelling Reasons

The government does not contest the existence of extraordinary and compelling reasons that justify compassionate release under the First Step Act. The court finds that Kelley's obesity combined with the ongoing presence of inmates testing positive for COVID-19 at FCI Butner establishes extraordinary and compelling reasons for release. "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020); *see also United States v. Johnson*, Case No. 4:18-CR-64-BO (E.D.N.C. June 10, 2020), Dkt. No. 95 (granting compassionate release motion by 38-year-old Butner inmate with obesity, diabetes, and hypertension).

### D. Section 3553(a) Factors

The government argues that release should be denied pursuant to the § 3553(a) factors, which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;

>(C) to protect the public from further crimes of the defendant; and
>
>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .

The government rightly notes the seriousness of Kelley's offense—felon in possession of a firearm—along with Kelley's lengthy criminal history, arguing that Kelley should not be released in order to protect the public from further crimes and to reflect the seriousness of Kelley's crimes. However, Kelley is scheduled to be released less than a year from now, and in five months he is scheduled to be placed in a halfway house. Therefore, the majority of Kelley's sentence has been either served or reduced. The government argues that Kelley is a medium security inmate with a high risk of recidivism, but it appears that the prospective danger to the community has been reduced by Kelley's rehabilitative efforts in prison. Moreover, Kelley will be subject to a three-year term of supervised release.

The government also argues that Kelley's release plan is inadequate, but the court has no reason to believe this is the case. As noted, Kelley proposes living with his youngest daughter at the home of a longtime friend. The friend plans to transport Kelley from Butner to her home. (Dkt. No. 155-1.) The government highlights Kelley's diagnosis as bipolar, but this diagnosis occurred long ago, when Kelley was twelve years old. (Presentence Report ¶ 74, Dkt. No. 98.) Since that time, Kelley has not been treated for bipolar disorder. (BOP Medical Records, Dkt. No. 143-1.) Further, Kelley's firm offer of prospective employment is better than most inmates would be able to accomplish from the confines of prison. (Dkt. No. 155-1.) In sum, the court finds that Kelley's release plan, which includes the social support of living with a friend and his

daughter, combined with prospective employment, rehabilitation in prison, and terms of supervised release are adequate to protect the public from further criminal behavior.

## III. CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the court finds that extraordinary and compelling circumstances warrant a reduction in Kelley's sentence; that Kelley does not pose a danger to any other person or the community; that the § 3553(a) factors support a reduction in sentence; and that the reduction is consistent with applicable Sentencing Commission Policy Statements. The court will therefore grant Kelley's motion for compassionate release and issue an appropriate order.

Entered: November 2, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge